UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN RAYMOND OSKAR, III,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 4:14-CV-04144-KES<br><br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO EXCLUDE EXPERTS<br>AND RENEWAL OF DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

Defendant, United States of America, moves for the exclusion of experts and renews its motion for summary judgment on all claims asserted by plaintiff, John Raymond Oskar, III. Docket 32. Oskar resists the motion. For the following reasons, the court denies the motion.

## FACTUAL BACKGROUND

On September 11, 2014, Oskar filed a medical malpractice suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1). Docket 1. In late March and early April of 2008, Oskar was treated at the Veterans Administration Medical Center (VAMC) in Sioux Falls, South Dakota, for pancreatitis and was diagnosed with an intestinal perforation. *Id.* On April 9, 2008, Oskar's doctor at the VAMC, Dr. Jagdish Gill, recommended that Oskar be sent to a hospital that was better equipped to deal with pancreatitis patients. *Id.* at 2. Instead, on April 10, 2008, Oskar was released from the VAMC. Docket 15 ¶ 2. From September 13, 2009, to September 28, 2009, Oskar was back at the VAMC for further treatment for his

pancreatitis. *Id.* ¶ 3. On September 28, 2009, Oskar needed emergency surgery because of his necrotizing pancreas. *Id* ¶ 4. Because the VAMC was not equipped to handle Oskar's pancreas surgery, he was sent from the VAMC to Sanford Health Hospital in Sioux Falls, South Dakota. Docket 1 at 3. The surgery was necessary in order to debride Oskar's pancreas and repair his intestinal perforation. *Id.* Although Oskar survived surgery, he was in a coma for more than ten days and required a lengthy recovery. Docket 22 ¶¶ 28, 55.

Oskar claims that a medication prescribed to him by the VAMC, Seroquel, was the cause of his pancreatitis. Docket 15 ¶ 6. After the surgery for his pancreatitis, Oskar claims his illness intensified because the VAMC failed to ascertain whether his intestinal perforation was resolved surgically at Sanford Health. *Id.* ¶ 5. Oskar's intestinal perforation persisted until he was treated for it in October 2011. Docket 1 at 5. Oskar also claims that the VAMC's failure to treat his pancreatitis caused him to develop insulin dependent diabetes. *Id.* at 1.

On August 18, 2010, Oskar filed a tort claim against the VAMC. Docket 4. On March 12, 2012, the Veterans Administration (VA) denied Oskar's claim. *Id.* Oskar applied for reconsideration of his tort claim, and the VA denied his claim again on March 26, 2014. *Id.*

## PROCEDURAL BACKGROUND

Having properly exhausted his administrative remedies, Oskar, acting *pro se*, filed suit against the United States on September 11, 2014. Docket 1. The court's first scheduling order set the deadline for disclosure of Oskar's

expert witnesses as June 12, 2015, but the deadline passed without Oskar disclosing any expert witnesses. Docket 14 at 2. On August 6, 2015, the United States moved for summary judgment or in the alternative for the partial dismissal of Oskar's claims from March and April 2008. Docket 13. On November 24, 2015, attorney Wanda Howey-Fox filed a notice of appearance on behalf of Oskar. Docket 17. Due to the appearance of counsel, Oskar was granted an extension to respond to the United States's motion for summary judgment or partial dismissal. Docket 20. Oskar filed his response in opposition to the United States's motion on January 8, 2016. Docket 21. On February 26, 2016, the court denied the United States's motion for summary judgment or partial dismissal and granted Oskar additional time to obtain an expert witness. Docket 26 at 9. Thus, the court entered a second amended scheduling order, giving Oskar until June 24, 2016, to disclose the identity and reports from his retained experts under Rule 26(a)(2) of the Federal Rules of Civil Procedure. Docket 27 ¶ 2.

On June 24, 2016, Oskar disclosed a list of four physicians he planned to use as expert witnesses, which consisted of Dr. Gill from the VAMC, and Dr. Matthew Sorrell, Dr. Eric S. Rolfsmeyer, and Dr. Ashraf Elshami from Sanford Health. Docket 28. None of Oskar's disclosures were accompanied by the physician's curriculum vitae or by an expert report. *Id.* Each disclosure contained a paragraph covering the events about which Oskar anticipated the physician would testify. *Id.* On July 19, 2016, the United States advised Oskar by letter that his one physician from the VAMC, Dr. Gill, could not act as an

expert witness for Oskar under 38 C.F.R. § 14.808, which prohibits VA personnel from providing opinion or expert testimony against the United States. Docket 34-2.

On April 21, 2017, the United States moved to exclude Oskar's disclosed experts and renewed its motion for summary judgment. Docket 32. On May 10, 2017, Oskar filed his response in opposition to the United States's motion. Docket 35.

## DISCUSSION

### I.    United States's Motion to Exclude Experts

#### A.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony in this court. Fed. R. Evid. 702. Under Rule 702, the trial court acts as a "gatekeeper" by screening a party's proffered expert testimony for its reliability and relevance. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."). "The rule clearly 'is one of admissibility rather than exclusion.'" *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991)). Thus, "[t]he exclusion of an expert's opinion is proper only if it is 'so fundamentally unsupported that it can offer no assistance to the jury[.]'" *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)).

## B.    Analysis

### 1.    Oskar's Proper Compliance with Rule 26(a)(2)(C)

The United States moves to exclude Oskar's experts because Oskar failed to designate expert witnesses in accordance with the Federal Rule of Civil Procedure 26(a)(2)(B). Docket 33 at 6. Rule 26(a)(2)(B) states that an expert disclosure, "unless otherwise stipulated or ordered by the court," must be "accompanied by a written report--prepared and signed by the witness--*if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.*" *Id.* (emphasis added). Here, Drs. Sorrell, Rolfsmeyer, and Elshami are not experts for purposes of Rule 26(a)(2)(B) because Oskar did not hire them specifically to testify on his behalf. Rather, these three doctors, who treated Oskar for his pancreatitis almost five years before Oskar filed his lawsuit against the United States, were Oskar's treating physicians. Thus, these doctors can be considered experts under Rule 26(a)(2)(C). And as treating physicians, Drs. Sorrell, Rolfsmeyer, and Elshami were not required by Federal Rule of Civil Procedure 26(a)(2) to provide expert reports. *See Owen v. United States*, No. CIV. 07-4014-KES, 2008 WL 5122282, at *3 (D.S.D. Dec. 5, 2008) (holding that because the expert was a treating physician who was not required to provide an expert report, there was no failure to comply with the expert disclosure deadline by not providing an expert report).

Federal Rule of Civil Procedure 26(a)(2)(C) lays out the requirements for expert witnesses who do not need to provide a written report. Under Rule

26(a)(2)(C), an expert who does not need to provide a report must disclose, "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

In Oskar's designation of experts he included a paragraph for each expert explaining what the physician was expected to testify about. *See* Docket 28. The summary paragraph that Oskar provided for each designated expert explained that it was anticipated the physician would testify about his educational background, training, and employment history. *Id.* Each paragraph also disclosed that each physician's testimony would include a survey of Oskar's health before surgery, the actual surgery or surgeries that each physician performed on Oskar, and Oskar's prognosis after the surgeries. *Id.* Although the United States argues to the contrary, Oskar has complied with the court's second amended scheduling order by designating his experts in accordance with Rule 26(a)(2). Thus, because Oskar properly followed Rule 26(a)(2)(C), and did not need to comply with Rule 26(a)(2)(B), improper designation and lack of expert reports are not grounds for the exclusion of Oskar's experts, and the United States's motion to exclude experts is denied.

## 2. Rule 26(a)(2)(C)'s Limitation on Expert Testimony

Because Drs. Sorrell, Rolfsmeyer, and Elshami are experts under Rule 26(a)(2)(C), and not under Rule 26(a)(2)(B), their testimony is limited. Thus, Drs. Sorrell, Rolfsmeyer, and Elshami are only able to discuss their care

of Oskar " 'based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial.' " *Bharucha v. Holmes*, No. CIV. 09-5092-JLV, 2010 WL 1878416, at *3 (D.S.D. May 11, 2010) (quoting *Navrude v. U.S. (USPS)*, No. C01-4039-PAZ, 2003 WL 356091, at *7 (N.D. Iowa Feb. 11, 2003)); *see also Navrude*, 2003 WL 356091, at *7 (holding that a physician did not need to prepare an expert report as long as he or she testified only to " 'that which is related to and learned through actual treatment of the [patient], and which is based on his or her personal knowledge of the examination, diagnosis, and treatment' " (quoting *Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 477 (D. Kan. 2001))); *Doyle v. Graske,* No. 7:05CV21, 2008 WL 824275, at *1 (D. Neb. March 20, 2008) (observing that a treating physician does not need to write an expert report so long as the expert testimony is limited to "matters encompassed in the ordinary care of a patient, including the cause of the medical condition, diagnosis and extent of disability"). The court has the discretion to " 'limit or prohibit a treating physician's opinion testimony that goes beyond information obtained during the physician's care and treatment of the patient.' " *Bharucha*, 2010 WL 1878416, at *3 (quoting *Navrude*, 2003 WL 356091, at *7). " '[I]f a treating physician reviews medical records from another health care provider for the purpose of rendering opinion testimony, then the physician may be considered "specially retained," and therefore subject to the requirements of Rule 26(a)(2)(B), despite having also treated the patient.' " *Id.* at *2 (quoting *Navrude*, 2003 WL 356091, at *7).

## II.    United States's Motion for Summary Judgment

### A.    Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

### B.    Analysis

#### 1.    Whether Expert Testimony is Required?

Oskar alleges that the United States government is liable for medical malpractice under the FTCA, 28 U.S.C. § 1346(b)(1), which grants this action

federal jurisdiction. Docket 1. The FTCA requires courts to apply the "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The relevant events took place in South Dakota, so the substantive law of South Dakota governs this case.

In South Dakota, "[t]he general rule in medical malpractice cases is that negligence must be established by the testimony of medical experts." *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986). This is because "a verdict in a malpractice case based on inferences stemming from speculation and conjecture cannot stand." *Id.* Here, Oskar alleges that the United States's negligent medical treatment caused him to suffer a potentially lethal case of necrotizing pancreatitis and to develop diabetes. Docket 1 at 1. Because the standard of care for a patient being treated for pancreatitis is not within the common knowledge of lay people, Oskar's claim requires him to present expert testimony. *See Kostel v. Schwartz*, 756 N.W.2d 363, 383 (S.D. 2008) ("The complexity of neurosurgery does not pose that kind of self-evident situation" where expert opinion testimony is unnecessary); *Luther v. City of Winner*, 674 N.W.2d 339, 346 (S.D. 2004) (noting that a "typical lay person would have no idea how to design and construct a sidewalk under the conditions on Winner's Main Street").

## 2. Whether an Expert Report is Required?

Oskar's experts, designated under Rule 26(a)(2)(C), were not required to provide an expert report, but are consequently limited in their testimony to their own personal knowledge and treatment of Oskar. *See Bharucha*, 2010 WL

1878416, at *3. If any of Oskar's experts expand their testimony to include their opinion about another health care provider's medical care then they are considered by the court to be specially retained, and are therefore required to provide an expert report. *Id.* at *3. With Oskar's expert witnesses limited to testimony about their personal knowledge of Oskar's treatment, they will not be able to offer an expert opinion about Oskar's alleged negligent treatment at the VAMC and whether that treatment was the cause of his pancreatitis and his diabetes. And Dr. Gill cannot testify about the care Oskar received at the VAMC because 38 C.F.R. § 14.808 bars VA employees from providing expert testimony against the United States. 38 C.F.R. § 14.808.

Expert testimony is necessary to establish the standard of care for pancreatitis, that there was a breach of this standard in Oskar's case, and that the breach was the cause of Oskar's illness. *See Turner v. Iowa Fire Equip. Co.,* 229 F.3d 1202, 1207 (8th Cir. 2000) (affirming the district court's grant of summary judgment in favor of the defendants after striking the treating physician's opinion due to lack of evidence of causation); *see also Bland v. Verizon Wireless, (VAW) L.L.C.,* 538 F.3d 893, 899 (8th Cir. 2008) (affirming summary judgment after the exclusion of a treating physician's causation opinion). Thus, at least one of Oskar's designated experts must provide a report so he can give his expert opinion about whether Oskar's care at the VAMC constituted negligence.

Oskar has requested an additional sixty days for his expert to produce a report. Docket 36 at 4. Oskar states that he now has the funds necessary to

hire an expert who will produce a report as is required under Rule 26(a)(2)(B). *Id.* Oskar will be given sixty days to provide an expert report in order to continue with his medical malpractice claim. But if Oskar does not provide the expert report within sixty days, summary judgment will be entered in favor of the United States because without an expert opinion establishing the standard of care, breach of the standard of care, and causation, there are no disputes of material fact and the United States would be entitled as a matter of law to judgment in its favor.

## CONCLUSION

Oskar properly complied with the court's second amended scheduling order and with Rule 26(a)(2) by designating experts according to 26(a)(2)(C). But Oskar has not identified expert testimony to establish that the United States committed medical malpractice. Oskar will have sixty days to file an expert report with the court. If Oskar fails to meet this deadline, the court will grant summary judgment to the United States without further motion by the United States. Thus, it is

ORDERED that the United States's motion to exclude experts and renewal of its motion for summary judgment (Docket 32) is denied.

DATED July 10, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
_____
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE